In the Interest of F.H., A Child.

**Department of Human Services, Appellant.**

No. 93–176.

Court of Appeals of Iowa.

Oct. 28, 1993.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Charles K. Phillips, Asst. Atty. Gen., for appellant.

Onita Mohr, Youth Law Center, Des Moines, guardian ad litem, for minor child.

Heard by OXBERGER, C.J., and HAYDEN and SACKETT, JJ.

HAYDEN, Judge.

This appeal arises from laws enacted in 1992 by the Iowa legislature regarding the appropriation of funds to the Iowa Department of Human Services (DHS) for foster care. The pertinent part of the act provided:

> It is the intent of the general assembly that the average reimbursement rates paid for placement of children out-of-state shall not exceed the maximum reimbursement rate paid to providers in this state.

1992 Iowa Acts ch. 1241, § 12(1)(d). DHS appeals a juvenile court order continuing the placement of F.H., the minor child in interest, with an out-of-state treatment provider. DHS contends F.H. cannot remain at the out-of-state facility because its rates exceed the maximum reimbursement rate paid to in-state providers.

I. *Factual Background.* On April 3, 1992, F.H. was adjudicated in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(f) (1991). F.H. was fourteen years old at the time of adjudication. The juvenile court transferred custody of F.H. to DHS. On June 12, 1992, F.H. was placed in the Leo Hoffman Center in Minnesota, with the Iowa DHS as payment agent only.

A review hearing was held on November 3, 1992. The juvenile court was informed the Hoffman Center would stop serving Iowa children as of December 31, 1992. The court confirmed F.H. was in need of assistance, and directed DHS to prepare a plan for future treatment of F.H.

The Hoffman Center was terminating its service contract with Iowa in response to an appropriations act in which the Iowa legislature required out-of-state service providers be paid only at the maximum rate paid to in-state providers. 1992 Iowa Acts ch. 1241, § 12(1)(d). The Hoffman Center was charging a per diem rate of $113 for the care of F.H. This rate was approximately forty dollars above the maximum per diem rate paid to foster care providers located in Iowa. The maximum reimbursement rate to be paid to in-state providers was initially established to be $75.11. 441 Iowa Admin.Code 156.9(2) (Sept. 2, 1992).

The Iowa Administrative Code provides DHS may make foster care payments only to providers with a purchase or service contract in force. 441 Iowa Admin.Code 156.20(2) (1993). The termination of the service contract, however, did not affect F.H. because the director of DHS allowed existing placements to remain at the Hoffman Center absent a contract. The rate limitation also did not affect F.H. because DHS, in adopting administrative rules relating to the appropriation, included a grandfather clause for placements like F.H.'s. F.H. had been placed at the Hoffman Center in June 1992 and was subject to a rate in excess of the in-state rates on December 31, 1992. The Hoffman Center was charging a per diem rate of $113 on December 31, 1992. The grandfather clause preserved the out-of-state placements of children who had been placed prior to January 1, 1993 and were subject to rates in excess of in-state rates on December 31, 1992. In F.H.'s case, the rate of $113 was preserved by the grandfather clause because the rate was in effect on December 31, 1992. The pertinent part of the Iowa Administrative Code provided:

> Effective January 1, 1993, out-of-state group care facilities shall not be reimbursed in excess of $75.11 per child per day, except that the rate of reimbursement for children placed prior to January 1, 1993, shall remain the same as that in effect on December 31, 1992.

441 Iowa Admin.Code 156.9(2) (Sept. 2, 1992). The Hoffman Center agreed such placements could remain at the center pursuant to this grandfather clause.

However, F.H.'s placement at the Hoffman Center became a problem when the out-of-state provider raised its rates. Through December 31, 1992, the Hoffman Center had charged DHS a per diem rate of $113 for the treatment of F.H. On January 1, 1993, the Hoffman Center increased its per diem rate to $116. The increase became effective on that date. The Hoffman Center stated it would no longer allow the old students to remain at the facility under the old rates after December 31, 1992.

The juvenile court held a review hearing on December 15, 1992. DHS argued F.H. could not remain at the Hoffman Center, an out-of-state provider, for two reasons: (1) the Hoffman Center's increased rate exceeded the maximum rate paid to in-state providers, and (2) the Hoffman Center's increased rate of $116 was not in effect on December 31, 1992; therefore the increased rate was not within the purview of the grandfather clause contained in Iowa Administrative Code chapter 441, rule 156.9(2) and was not preserved. DHS presented two alternative in-state programs for the treatment and care of F.H.: the Step Program and Woodland Heights. A DHS worker testified he had been pleased with the treatment provided at Woodland Heights in the past and an Iowa placement would allow F.H. to remain closer to his family. A juvenile court officer testified Woodland Heights could meet F.H.'s needs, but F.H. would have to start over in terms of programming and bonding with other children and adults. The officer favored placement of F.H. at the Hoffman Center, and did not recommend the Step Program. A Hoffman Center therapist recommended F.H. remain at the center. After the hearing, the guardian ad litem filed a brief stating F.H. had a constitutional right to treatment at Hoffman.

The juvenile court ordered F.H. remain at the Hoffman Center. The court concluded placement in either of the two alternative programs would not be in the best interests of F.H. The court stated treatment at the Hoffman Center should not be denied because of "a three-dollar-a-day dispute."

DHS appeals, arguing payment of higher rates for out-of-state placements goes against legislative intent to reduce out-of-state expenditures and force in-state providers to develop programs to meet the needs of Iowa children.

**II.** *Scope of Review.* This appeal arises from a review proceeding of a CINA adjudication. The juvenile court held a review hearing and determined F.H. should remain at the Hoffman Center. The court refused to modify placement to an in-state provider. The juvenile court has authority to modify a dispositional order. Iowa Code § 232.103 (1993). Our review of CINA proceedings is de novo. *In re Blackledge,* 304 N.W.2d 209, 210 (Iowa 1981) (citation omitted); *In re N.M.W.,* 461 N.W.2d 478, 479 (Iowa App.1990).

**III.** DHS has the authority to use funds appropriated to it, subject to any limitations the legislature places upon the funds. Iowa Code § 234.6(6)(b) (1993). Iowa Code section 234.6(6)(b) provides, in pertinent part:

> The administrator shall have authority to use funds available to the department, subject to any limitations placed on the use thereof by the legislation appropriating the funds, to provide to or purchase, for families and individuals eligible therefor, services including but not limited to the following:
>
> b. Foster care, including foster family care, group homes and institutions.

*Id.* In 1992 the Iowa legislature appropriated funds to DHS for foster care but limited the amount DHS could pay to out-of-state providers. 1992 Iowa Acts ch. 1241, § 12(1)(d).

DHS then adopted a grandfather clause in its administrative rules relating to the payment of rates to out-of-state providers. The rule provided, in pertinent part: "the rate of reimbursement for children placed prior to January 1, 1993, shall remain the same as that in effect on December 31, 1992." 441 Iowa Admin.Code 156.9(2). Pursuant to this grandfather clause, DHS can pay to an out-of-state provider a rate which exceeds the maximum rate charged by an in-state provider only if the child had been placed in the out-of-state facility prior to January 1, 1993 and had been subject to the higher rate on December 31, 1992.

We now apply the appropriation act and administrative rule to the facts of this case. The date on which DHS placed F.H. does not create a problem with this out-of-state placement. DHS placed F.H. at the Hoffman Center in June 1992, almost seven months before the cutoff date contained in the grandfather clause. The problem arose when the Hoffman Center's increased its per diem rate after December 31, 1992. The Hoffman Center's per diem rate on and through December 31, 1992, was $113. This rate was preserved by the grandfather clause contained in Iowa Administrative Code chapter 441, rule 156.-9(2). The grandfather clause preserved only those rates which were in existence on December 31, 1992. On January 1, 1993, the Hoffman Center increased its per diem rate to $116. The increase took effect immediately. The increased rate of $116 did not exist on December 31, 1992; therefore, the rate is not preserved by the grandfather clause. The Hoffman Center's per diem rate of $116 significantly exceeds the maximum rate of $75.11 paid to in-state providers. *See* 441 Iowa Admin.Code 156.9(2).

Upon review of the appropriations act as a whole, the legislative intent was to strengthen and develop additional programs in the state and to reduce the amount of funds going to out-of-state providers. *See* 1992 Iowa Acts ch. 1241, § 12. The intent of the legislature was to prohibit DHS from paying out-of-state providers in excess of the amount paid to in-state providers. The payment of rates to an out-of-state provider, such as the Hoffman Center, in excess of the maximum rates paid to an in-state provider goes against the legislative intent. We must give effect to the intention of the legislature as expressed in the appropriation act. *See*

*Crow v. Shaeffer*, 199 N.W.2d 45, 47 (Iowa 1972). The language of the appropriations act and the legislative intent behind the act are clear. DHS cannot use funds appropriated by the legislature in a manner which would violate restrictions placed on the appropriation by the legislature. *See* Iowa Code § 234.6(6)(b) (1993). DHS lacks authority to expend funds for F.H.'s placement at the Hoffman Center because the out-of-state foster care provider charges a rate which is in excess of the maximum rate of in-state providers and which is not preserved by the grandfather clause contained in Iowa Administrative Code chapter 441, rule 156.-9(2). DHS would be in violation of the appropriation act and administrative rule if it funded this specific out-of-state placement. DHS must stay within the confines of its authority. We conclude the dispositional order regarding F.H. must be reversed because the minor child cannot remain at the out-of-state facility under the circumstances of this case.

We reverse the decision of the juvenile court. We remand this case to the juvenile court to determine an appropriate placement.

**REVERSED AND REMANDED.**