# IN THE SUPREME COURT OF IOWA

No. 46 / 04-2013

Filed June 23, 2006

**CHARLES A. STREAM and**
**DIANE B. MCMAHAN,**

Appellees,

vs.

**GREG GORDY, WILLIE VAN WEELDEN,**
**and LAWRENCE ROUW, as MAHASKA**
**COUNTY BOARD OF SUPERVISORS,**

Appellants.

---

Appeal from the Iowa District Court for Mahaska County, James Q. Blomgren, Judge.

Members of the board of supervisors appeal a district court order finding the supervisors' action illegal when they refused to provide full-time compensation and benefits to an employee shared by the county attorney's and the assessor's offices and requiring the county to pay outside counsel's legal fees. **REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Carlton G. Salmons of Gaudineer, Comito & George, L.L.P., West Des Moines, for appellants.

Garold F. Heslinga of Heslinga, Heslinga, Dixon & Moore, Oskaloosa, for appellees.

**WIGGINS, Justice.**

In this case, we must decide whether the district court was correct when it found the county supervisors acted illegally by refusing to provide full-time compensation and benefits to an employee shared between the county attorney's and the assessor's offices. We must also decide whether the county is responsible for the legal fees of the county attorney's and the assessor's outside counsel. Because the members of the board of supervisors were exercising a legislative function at the time they disapproved the full-time compensation and benefits for the shared employee, a writ of certiorari will not lie against them. Additionally, the county is not responsible for the legal fees of the county attorney's and the assessor's outside counsel because the county attorney and the assessor failed to obtain authorization from their respective boards prior to retaining outside counsel. Accordingly, we reverse the judgment of the district court and remand the case for entry of judgment consistent with this opinion.

## I. Background Facts and Proceedings.

Charles Stream, the Mahaska County attorney, shared a full-time employee with the sheriff's office, splitting the employee's time, salary, and benefits. When that employee left Stream's office, he decided to fill the vacancy in the same manner. In January 2003, Stream informed the Mahaska County board of supervisors (Board) of his intention to do so at its meeting regarding his budget for fiscal year 2003-04. This budget included $11,000 for the county attorney's share of the employee's full-time salary as well as one-half the cost of family benefits for the employee. Stream then hired Carrie Ferguson to fill the part-time secretary vacancy in his office on February 1, paying her $9 an hour. At the time of Ferguson's hire, Stream told her that if she worked well he would attempt to make her position full-

time by having her work part-time in another county office. Stream did not tell Ferguson the employee-sharing arrangement was contingent on approval by the Board. Instead, he told her the Board had already approved such an arrangement.

As he had done in the past, Stream sought the Board's approval for his hiring of Ferguson. The Board approved her hire at $9 an hour with no benefits. In March, the Board approved and certified Stream's budget for fiscal year 2003-04. In April, Stream became aware of a part-time clerk opening in the county assessor's office. He approached Diane McMahan, the Mahaska County assessor, about hiring Ferguson for that position. Stream and McMahan agreed to share Ferguson as an employee and to split equally the costs of her $22,000 salary and benefits.

Although McMahan's office was not required to obtain the Board's approval for the hiring of Ferguson, Stream and McMahan jointly wrote a letter on May 23 to the Mahaska County auditor, with a copy to the Board, notifying the auditor of their arrangement so she could place Ferguson on the payroll at the higher rate of pay with benefits effective June 1. Around this time, McMahan also notified the Mahaska County conference board of this arrangement as a matter of courtesy. The assessor has the authority to hire office personnel subject to the budget limitations imposed by the conference board. Iowa Code §§ 441.13, 441.16 (2003).

On May 27, after Stream had appeared at a meeting of the Board where he criticized the Board's lack of communication as to changes in the health insurance program, the Board met with Stream and McMahan to discuss the employee-sharing arrangement. Stream justified the arrangement by claiming it would establish a longer-term employee and avoid potential turnover as a part-time position.

On June 2, the Board again discussed the employee-sharing arrangement, focusing on its costs. Supervisors Lawrence Rouw and Greg Gordy voted not to approve the employee-sharing arrangement while supervisor Willie Van Weelden voted for it. Accordingly, the auditor could not place Ferguson on the payroll as a joint employee of the county attorney and the assessor for the $22,000 salary plus benefits.

Stream learned of the Board's decision the next day. Stream went to his office, did some quick research, and contacted outside counsel. Without seeking Board approval, Stream hired outside counsel that day. He then asked McMahan if she wanted to join him in pursuing an action against the supervisors over their refusal to confirm the employee-sharing arrangement. She agreed to join in the lawsuit and to share the costs of hiring outside counsel from their respective budgets.

Stream and McMahan filed a petition in certiorari challenging the Board's decision not to approve the employee-sharing arrangement. They named the individual supervisors of the Board as defendants. The district court issued the writ of certiorari. The supervisors filed a return to the writ, an answer, and a counterclaim asserting McMahan and Stream did not have the authority to commence the action against the supervisors, retain outside counsel, or pay for such counsel. The supervisors also sought a declaratory judgment asking the court to find Stream and McMahan personally liable for the attorney fees in this case.

The district court entered a ruling partially sustaining the supervisors' motion for summary judgment and dismissed McMahan's claims because, as assessor, she had independent statutory authority to hire and pay Ferguson, which was not subject to Board approval. The supervisors' motion for summary judgment as to Stream, however, was

overruled by the court because a genuine issue of material fact existed as to whether the supervisors' action was arbitrary, capricious, or for illegitimate reasons.

The case proceeded to trial. The district court ruled in favor of Stream finding the supervisors' failure to approve the employee-sharing arrangement with full-time compensation and benefits was illegal. The court also ruled the county attorney and the assessor acted legally when they retained outside counsel and ordered the county to pay Stream's outside counsel's legal fees.

## II. Issues.

In this appeal, we must determine: (1) whether the supervisors were exercising a judicial or legislative function when they made their decision not to approve the employee-sharing arrangement; (2) whether the county should pay outside counsel's legal fees; and (3) whether Stream and McMahan are personally liable for outside counsel's attorney fees.

## III. Scope of Review.

"A writ of certiorari lies where an inferior tribunal, board, or official, exercising judicial functions, has exceeded its proper jurisdiction or otherwise acted illegally." *Waddell v. Brooke*, 684 N.W.2d 185, 189 (Iowa 2004). In such an action, the person seeking the writ has the burden of proof. *Id.* Review of a certiorari proceeding is for correction of errors at law. *Id.* at 190.

Likewise, " '[a] declaratory judgment action tried at law limits our review to correction of errors at law. We are bound by well-supported findings of fact, but are not bound by the legal conclusions of the district court.' " *IMT Ins. Co. v. Crestmoor Golf Club*, 702 N.W.2d 492, 495 (Iowa 2005) (citations omitted).

**IV. Analysis and Discussion.**

Stream brought this certiorari action against Gordy, Van Weelden, and Rouw in their capacity as supervisors for Mahaska County claiming their action was "arbitrary, capricious, and an attempt to control an autonomous county office" when they voted to disapprove Stream's employee-sharing arrangement with the assessor's office. A writ of certiorari will not lie against the supervisors if they were exercising a legislative function at the time they refused to confirm the employee-sharing arrangement. *See* Iowa R. Civ. P. 1.1401 (stating "[a] writ of certiorari shall only be granted when specifically authorized by statute; or where an inferior tribunal, board or officer, *exercising judicial functions,* is alleged to have exceeded proper jurisdiction or otherwise acted illegally" (emphasis added)). In a certiorari proceeding, the nature of the act performed determines whether that act was legislative or judicial. *Gates v. City Council of Bloomfield,* 243 Iowa 1, 9-10, 50 N.W.2d 578, 583 (1951).

The general assembly gave the supervisors the authority to "determine the compensation of extra help and clerks appointed by the principal county officers." Iowa Code § 331.904(4). Generally, it is a legislative function to fix the terms and conditions of public employment. *State Bd. of Regents v. United Packing House Food & Allied Workers,* 175 N.W.2d 110, 113-14 (Iowa 1970). Additionally, "[t]he appropriation of money is essentially a legislative function under our scheme of government," and inherent in that power "is the power to specify how the money shall be spent." *Welden v. Ray,* 229 N.W.2d 706, 709-10 (Iowa 1975).

The general assembly vested the power of the county with the supervisors. Iowa Code § 331.301(2). It gave them the authority to

determine the compensation of the extra help and clerks appointed by the principal officers of the county in order to avoid the turmoil that would result if each individual county office was allowed to dictate to the supervisors the amount of money the supervisors should appropriate to that office for its staff's compensation levels. In order to ensure the supervisors properly fund all aspects of county government, the supervisors must strike a balance between the public needs of each county agency and the limited financial resources available to the county. We must leave the interdependent political, social, and economic judgments necessary to allocating the county's limited financial resources among the various county agencies to the supervisors and not to the individual county officials. In making these allocations, the supervisors are responsible for setting the priorities of the county and weighing the needs of the agencies against those priorities. When making these decisions, the supervisors are exercising their legislative function.

At the time the supervisors voted to disapprove the county attorney's employee-sharing arrangement, they were doing nothing more than making a legislative determination vested in them by the general assembly that they would not spend any more of the county funds in salary or benefits for a position they previously authorized at a lower pay level with no benefits. Accordingly, under the facts of this case, the supervisors were exercising a legislative function when they refused to confirm the county attorney's employee-sharing arrangement. Therefore, a writ of certiorari will not lie to review the supervisors' action in not approving the employee-sharing arrangement between the county attorney and the assessor.

This conclusion does not mean the supervisors' actions are beyond the reach of the people they were elected to serve. The supervisors'

decisions are subject to review by the electorate at the next election. Under the separation-of-powers doctrine, "electoral control [is] an important restraint on legislative conduct." *Teague v. Mosley*, 552 N.W.2d 646, 650 (Iowa 1996).

The supervisors also appeal the district court's decision allowing the county attorney and the assessor to pay their outside counsel's legal fees from their budgets. The county attorney contends he had a budget line item of $250 for outside legal counsel. He incurred $267.50 for his half of outside counsel's first bill and $4949.90 at the time of trial. The county attorney further claims he had unexpended funds in the amount of $13,827.15 in his budget to pay outside counsel. The assessor contends she had a budget line item of $28,000 for attorney fees, specifically designated for hiring outside counsel in property tax assessment appeals, and $2000 for legal services.

Counsel for the supervisors instructed the auditor not to pay claims for attorney fees incurred by the county attorney, but the parties stipulated that outside counsel would receive payment for McMahan's half of the fees. The parties further agreed, however, the county could get this amount back if the supervisors prevailed on their counterclaim.

The Code provides:

> The board [of supervisors] may appoint an attorney to act as county attorney in a civil proceeding if the county attorney and all assistant county attorneys are disqualified because of a conflict of interest from performing duties and conducting official business.

Iowa Code § 331.754(4). The Code further provides:

> In the case of counties, the county attorney shall represent the assessor and board of review in all litigation dealing with assessments. Any taxing body interested in the taxes received from such assessments may be represented by an attorney and

> shall be required to appear by attorney upon written request of the assessor to the presiding officer of any such taxing body. The conference board may employ special counsel to assist the city legal department or county attorney as the case may be.

*Id.* § 441.41. These statutes give the authority to the board of supervisors to hire outside counsel for the county attorney and to the conference board to hire outside counsel for the assessor. Under these statutes, the county attorney and the assessor were required to seek authorization from their respective boards prior to obtaining outside counsel. *See Tatlock & Wilson v. Louisa County*, 46 Iowa 138, 139 (1877) (stating "[w]hile it may be the duty of the district attorney to appear for and defend actions brought against a county, this by no means gives him authority to employ additional counsel, much less would his acceptance of the services of attorneys who might appear in the cause bind the county"). Their failure to do so precludes them from requiring the county to pay outside counsel's legal fees. *See Smith v. Bd. of Supervisors*, 320 N.W.2d 589, 593 (Iowa 1982) (holding the legal fees of outside counsel hired by county officials without board authorization were not payable by the county because attorney fees are generally not permitted in the absence of a statute or an agreement by the party to be charged and there is no inherent power of the court to make such an allowance).

In the alternative, the county attorney argues he could pay outside counsel's legal fees from the unexpended funds in his budget. Generally, once the supervisors approve and appropriate the county attorney's budget, the county attorney can reallocate his appropriation within his office so long as the expenditures he authorizes are within his budget limits and for legitimate purposes. *See* Iowa Code § 331.437 (limiting a county official's expenditures to the amount appropriated by the board of supervisors). Once a budget is approved, however, the supervisors continue to exercise

an oversight function by virtue of their power of approval over the payment of expenditures made on behalf of the county. *See id.* § 331.401(1)(*p*) (stating the board of supervisors shall "[e]xamine and settle all accounts of the receipts and expenditures of the county and all claims against the county, except as otherwise provided by state law"); Iowa Code § 331.506(1)(*a*) (stating "the auditor shall prepare and sign a county warrant only after issuance of the warrant has been approved by the board [of supervisors] by recorded vote"). Clearly, the expenses for outside counsel's legal fees were not authorized by the officials' respective boards. If under these circumstances we were to allow payment of these fees from other funds within the officers' respective budgets, we would make the authorization provisions of sections 331.754(4) and 441.41 a nullity. Thus, the county attorney's unauthorized expenditures for outside counsel's legal fees are not payable by the county.

Finally, the supervisors seek to hold the county attorney and the assessor personally liable for outside counsel's legal fees. The question of personal liability is an issue for outside counsel, the county attorney, and the assessor. The record presents no such controversy between those parties. Consequently, there is no justiciable controversy and we will not issue an advisory opinion on the matter. *See Hartford-Carlisle Sav. Bank v. Shivers*, 566 N.W.2d 877, 884 (Iowa 1997) (stating "[t]his court has repeatedly held that it neither has a duty nor the authority to render advisory opinions").

**V. Disposition.**

We hold a writ of certiorari will not lie to review the action of the supervisors in refusing to fund the employee-sharing arrangement between the county attorney and the assessor for the reason that when the

supervisors acted to disapprove payment they were exercising a legislative function. Additionally, the county is not responsible for the legal fees of outside counsel retained by the county attorney and the assessor because the county attorney and the assessor failed to obtain the proper authorization from their respective boards prior to obtaining outside counsel. Thus, we reverse the judgment of the district court and remand the case for entry of judgment consistent with this opinion.

**REVERSED AND CASE REMANDED WITH DIRECTIONS.**