# IN THE COURT OF APPEALS OF IOWA

No. 19-1222
Filed September 2, 2020

IN RE THE MARRIAGE OF GEORGE G. MRLA, JR.
AND ANGELA M. MRLA

Upon the Petition of
GEORGE G. MRLA, JR.,
        Petitioner-Appellee,

And Concerning
ANGELA M. MRLA,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, Jeffrey A. Neary,

Judge.


        Angela Mrla appeals from the property division decree entered after trial on

remand.  Finding no merit in her arguments, we affirm.  **AFFIRMED.**


        R. Scott Rhinehart (until withdrawal), Sioux City, and Michelle Lewon of

Michelle Lewon, PLC, Sioux City, for appellant.

        Rosalynd J. Koob and Joel D. Vos, Sioux City, for appellee.


        Considered by Doyle, P.J., Mullins, J., and Vogel, S.J.*

        *Senior judge assigned by order under Iowa Code section 602.9206 (2020).

**DOYLE, Presiding Judge.**

Angela Mrla and George Mrla were married for about four years before George filed to dissolve the marriage. Angela appealed the first dissolution decree, asserting the property division was inequitable. *In re Marriage of Mrla*, No. 17-1029, 2018 WL 3057482, at *1 (Iowa Ct. App. June 20, 2018). This court remanded the case for a more detailed evaluation of the couple's assets. *Id.* at *2. A second trial was held. The district court then entered a thirty-four page property division decree. Faulting the second decree in many respects, Angela again appeals. After a careful review of the record, we affirm the district court's property division decree.

## I.      Facts and Proceedings.

Our previous opinion sets the stage:

> Angela and George married in 2011. Prior to that time, they cohabited along with Angela's two children. During the marriage, George farmed his own land and worked as a self-employed truck driver, a business he started shortly after the parties married. Angela and George separated in 2015.

*Id.* at *1. George petitioned for dissolution of the marriage in September 2015. The district court entered a decree after a March 2017 trial. Angela appealed the district court's allocation of the couple's property, claiming the district court failed to equitably divide the property. *Id.*

This court determined the decree was "fatally flawed and incapable of meaningful appellate review." *Id.* We found that the decree failed to make a determination regarding disputed factual issues and did not identify all the parties' assets and liabilities. *Id.* The decree valued none of the parties' property. *Id.* It did not appear to this court that the district court divided all the property at issue.

*Id.* Without an ability to exercise appellate review over the property division, we vacated "the property division in the decree and remand[ed] this matter to the district court to identify the parties' property subject to division, to determine a value for all of the property based on the evidence admitted at trial, and to equitably divide the property." *Id.* at *2.

On remand, before a different judge, the district court held a new trial and allowed the parties to present new evidence. In June 2019, the district court entered a detailed thirty-four page decree valuing and dividing the parties' properties. The decree included a distribution of assets and liabilities spreadsheet to memorialize the division of property between the parties. It shows Angela's award of marital assets to be $25,278.26 and George's to be $107,743.72. Angela was awarded $19,153.32 in marital debt and George awarded $192,469.26—leaving Angela a net of $6124.94 in marital assets and George with a negative $84,725.54.

Angela now appeals.

## II.     Standard of review.

We review dissolution actions de novo. *See In re Marriage of Larsen*, 912 N.W.2d 444, 448 (Iowa 2018); *see also* Iowa R. App. P. 6.907. We give weight to the decree's factual findings. *Id.* When it comes to the credibility of witnesses, "[t]here is good reason for us to pay very close attention to the trial court's assessment." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). This is because the district court, in making its credibility assessment, has the distinct advantage of listening and observing each witness's demeanor firsthand, while we must rely on a cold transcript. *See Albert v. Conger*, 886 N.W.2d 877, 880 (Iowa

Ct. App. 2016); *In re Marriage of Udelhofen*, 444 N.W.2d 473, 474 (Iowa 1989). "[W]e accord the trial court considerable latitude in resolving disputed claims and will disturb a ruling 'only when there has been a failure to do equity.'" *In re Marriage of Smith*, 573 N.W.2d 924, 926 (Iowa 1998) (citation omitted).

### III.  Analysis.

Iowa Code section 598.21(5) requires marital property be divided equitably in dissolution-of-marriage cases. *See In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). "The partners in a marriage are entitled to a just and equitable share of the property accumulated through their joint efforts," *In re Marriage of Hazen*, 778 N.W.2d 55, 59 (Iowa Ct. App. 2009), but it "is important to remember marriage does not come with a ledger." *In re Marriage of Fennelly*, 737 N.W.2d 97, 103 (Iowa 2007). In determining how to equitably divide the property, an "equitable division is not necessarily an equal division." *Hansen*, 733 N.W.2d at 702. Though "it is generally recognized that equality is often most equitable," *Fennelly*, 737 N.W.2d at 102, "[e]quitable distribution depends upon the circumstances of each case." *Hansen*, 733 N.W.2d at 702.

### A. Background.

After George and Angela separated, Angela and her daughter filed two civil suits against George. These suits arose out of certain allegations made by and on behalf of Angela's daughter as well as allegations made by Angela against George. The civil cases did not succeed and were either dismissed voluntarily or by the court. In another matter, Angela reported to a grain company that George was misusing his corn license. She did so because she was mad at George. George hired legal representation to defend himself in these matters and incurred legal

fees. To keep Angela's daughter out of the trial, the parties agreed during the second trial that there would be no mention of the other civil cases.

After entry of the property division decree, Angela timely moved to amend and enlarge. Among other things, she complained it was "unfair to force her to pay for one-half (1/2) of George's legal fees for his various misdeeds but then she be responsible for all of hers; when she and her daughter are the victims here." In pointing out that the court noted in its decree that "The civil matters noted above were each unsuccessful and were either dismissed prior to judgment voluntarily or by the Court and the Monsanto matter was initiated by Angela because she was mad at George," Angela claimed the district court improperly "considered fault to justify its ruling." Angela filed a supplemental motion to amend and enlarge, which was found to be untimely.[1]

### B. Fault

Angela's arguments on appeal are a bit difficult to follow.[2] On the one hand, she contends the "trial court clearly considered fault in its ruling and should not have considered fault."[3] On the other hand, in an apparent tit-for-tat, Angela

---

[1] The supplemental motion was filed after the fifteen-day deadline. *See* Iowa R. Civ. P. 1.904(3).

[2] That citations to the massive record are far and few between in the argument section of the brief makes it difficult to discern whether a statement is fact, fiction, or argument, and unnecessarily elevates our frustration level. Judges are not like pigs, routing for truffles buried in the record. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *see also Brown v. Allen*, 344 U.S. 443, 537 (1953) ("He who must search a haystack for a needle is likely to end up with the attitude that the needle is not worth the search.").

[3] Problematic is that Angela does not articulate what fault or whose fault the district court so "clearly" considered. Presumptively, Angela perceives this fault was viewed by the court as hers because she was the one who brought or encouraged unsuccessful suits and made failed claims against George, which required George

argues if fault is a factor, the district court should have considered fault on some other issues where she claims George engaged in misdeeds. Angela then contends that if fault is not a factor, she should not have to pay half of George's promissory notes and that George should compensate her for items he allegedly burned.

The parties agreed they would not get into fault at trial. In fact, Angela's attorney specifically asked the court to omit such testimony as shown in this colloquy:

> MR. RHINEHART: Yes, Your Honor. I didn't want to interrupt earlier. We had a conversation yesterday about fault in a divorce case.
> THE COURT: Yes.
> MR. RHINEHART: And I think we have assurances from counsel that we are not going to get into fault in this case, and so I had my client's daughter, . . . , here. She is not intended to be called as a witness unless the assurances of opposing counsel fail and people start blurting out things that are not to be admitted in the case. So my point is I would prefer to have her sit in here because I don't expect to call her as a witness at all . . . .

The district court did not hear any evidence about the matters from the civil suit involving the daughter. Angela raised the issue post-decree when she asked the court to consider another judge's ruling on the civil case. Asking the court to consider new evidence in an Iowa Rule of Civil Procedure 1.904(2) motion is improper. *Homan v. Branstad* 887 N.W.2d 153, 161 (Iowa 2016). In any event, Angela does not challenge the district court's denial of her motion to amend and enlarge.

---

to incur legal fees in defending himself. We do not discern that the district court assessed any fault to Angela.

We find no merit in Angela's claims that the district court should have made George compensate her for items he allegedly burned. She claimed the items were worth $5000. But just saying a cow has three legs does not make it so. The district court found that because there was no evidence of age or condition of these items to value them, "Angela's claim for the loss of these items fails for lack of proof." We agree.

Of the debt awarded to George, $85,000 was in promissory notes for money George borrowed to pay legal fees in matters unrelated to the dissolution of marriage. Angela claims this promissory note debt should not have been considered a marital debt to be shared by the parties. Angela is mistaken when she alleges that the district court ordered her to pay half of George's attorney fees related to the civil cases and the Monsanto matter. The court determined

> that the obligations incurred by George as noted above, except for those obligations related to attorney fees in this dissolution matter, should be considered as marital debt for purposes of division of assets and liabilities and because they are each supported by a promissory note, executed by George alone, they should be paid by George.

There is nothing in the decree—by equalization payment, property division, or otherwise—that obligates Angela to pay, directly or indirectly, half of George's attorney fees. We affirm the district court on all the above issues.

### C. Date of Valuation of Assets

A status conference was held before the second trial. The district court determined

> that a new trial on the property division issues should be held in order for the Court to be able to assess credibility where required, assess value fluctuations, if any, from the time of the former trial and the new trial date so as to divide the property equitably, and to allow for the

complete submission of the disputed issues in a manner contemplated by the Court.

The court permitted discovery "as to the issues related to the division of the property, the value of the dispute property, and related matters." George sought interlocutory appeal seeking clarification of the Iowa Court of Appeals decision on whether it remanded the case for a new trial or if it was instructing the district court to decide the case on the evidence previously submitted at the first trial. The interlocutory appeal was denied and the parties engaged in new discovery.

On appeal, Angela argues that the district court failed to correctly value the residence on 120th Street, the 147 acres of land George bought before the marriage, and a 2015 Heil tanker trailer.

**D. 120th Street property.**

Angela claims she should have received the property located on 120th Street. The couple bought the property in 2009 before they were married. Angela contributed $6000 towards the down payment and George made the monthly mortgage payments ever since. In its evaluation, the district court categorized the property as a non-marital asset. The court reasoned that because Angela contributed physically and financially to some renovation work on this property she would ordinarily be entitled to reimbursement but given the court's division of assets, it would be inequitable to reimburse her. We agree.

**E. 147 Acres of Land.**

The same can be said for Angela's contribution to the 147 acres of land. She claims she is entitled to ten percent of the property's value at the time of the second trial. George and his brother David bought the property in 2003—well

before Angela came into the picture. George used a $14,000 gift from his parents to make the down payment on the land, which was then subject to a $120,000 mortgage. The land is titled in David and Jodie Mrla, as joint tenants with rights of survivorship and George as tenants in common.

When the parties married, the balance remaining on the mortgage was $7570. The district court calculated this to be six percent of the value of the land; Angela claims it is ten percent. Angela claims the mortgage was paid off using funds she brought into the marriage.[4] The court found that the balance of the mortgage was paid off with George's premarital funds. The court ruled that this property was not part of marital estate. So it matters not whether the six percent (or ten percent) appreciated during the term of the marriage. We have no quarrel with the district court's valuation of the 147 acres of land and its distribution.

**F. Heil Tanker Trailer.**

Next, Angela argues that the district court misunderstood the financial information about the 2015 Heil tanker trailer because it used a 2019 depreciated value while considering a 2016 loan balance. George bought the Heil tanker trailer after their marriage in January 2015 for $68,500. The loan was for $61,660 and both George and Angela were co-signors on the note. The court awarded George the tanker. The district court valued the Heil tanker at $40,000 at the time of the second trial and included a liability value of $18,322 for the loan as of January 2016.

---

[4] There is no citation to the record for this assertion. See Iowa R. App. P. 6.903(2)(g)(3) (Each argument must include "citations . . . to the pertinent parts of the record.").

According to Angela, George received "the benefit of a lesser fair market value with a higher debt" because she claims George had paid off the balance on the tanker at the time of the second trial. Rebuking that hypothesis, George submits that, although he made a payment on the tanker trailer right before the second trial, he had borrowed money from relatives to make a payment on the tanker trailer note in 2016 and still owed $18,325.60. We find Angela's argument without merit.

**G. This court's prior "findings" of the value of the couple's assets.**

After our first review, we sent the case back to the district court to determine a proper value of the assets in dispute. *In re Marriage of Mrla*, 2018 WL 3057482, at *2. In our decision we observed, "At trial, the parties identified over one million dollars in assets and over two-hundred and thirty thousand dollars in liabilities at issue." *Id.* at *1. Angela seizes upon this sentence and asserts the district court "ignored the specific findings by the Iowa Court of Appeals that the parties had over a million dollars in assets and $230,000 in debt." She claims the district court's finding George had a negative net worth of $84,725 is out of whack with our opinion. But Angela grossly misinterprets our observation. This court made no "finding" that the parties had over a million dollars in assets with $230,000 in debt. We merely said the *parties identified* over one million dollars in assets and $230,000 in debt. *Id.* (emphasis added). We noted "At trial, the parties identified numerous contested assets and liabilities." *Id.* What the parties identified and contested is not a finding by this court. The district court did not ignore any findings by this court, so we reject Angela's assertion to the contrary.

Angela also asserts it was inconsistent for the district court to find Mrla, L.L.C. had no value after this court "determined that Mrla, L.L.C. had significant value." Angela makes no citation to our opinion.[5]  Nor could she because we never made any such determination.  Nor did the district court find the company had no value.  It found the company had two assets, a semi-tractor and the Heil tanker trailer.  Other than these two assets, which the court awarded to George, the court found "that Mrla, L.L.C. [had] no separate value to be divided between the parties for purposes of asset and liability division and distribution and for purposes of any property equalization."  We reject Angela's assertion.

The rest of Angela's argument under this issue is flawed as it fails to reference her contentions to the pertinent parts of the record.  *See* Iowa R. App. P. 6.903(2)(g)(3) (An argument containing the party's contentions and the reasons for them must include "citations to the authorities relied on and references to the pertinent parts of the record in accordance with rule 6.904(4).  Failure to cite authority in support of an issue may be deemed waiver of that issue.").

**H. Exclusion of marital assets in the decree.**

Lastly, Angela states, "The trial court excluded any value for George's business Mrla L.L.C, his farmland, and monies [Angela] invested in both of them and the acreage in its ruling."  She requests the value of these items be added back as marital assets and that George's promissory notes be excluded from the marital debt.  Angela makes the general statement that "the trial court may place

---

[5] *See* Iowa R. App. P. 6.903(2)(g)(3) (requiring support of appellant's contentions "with citations to the authorities relied on and references to the pertinent parts of the record.").

different degrees of weight on the premarital status of property, but it may not separate the asset from the divisible estate and automatically award it to the spouse that owned the property . . . ." After our review, we do not perceive that the district court "automatically" awarded each party the property they owned before the marriage. We reject Angela's request.

Angela also requests us to "clarify how retrials in divorce cases are to be handled and what evaluation dates are to be used." We decline the invitation. Such a general request smacks of a request for an advisory opinion. Iowa courts have repeatedly held we have no "duty nor the authority to render advisory opinions." *Stream v. Gordy,* 716 N.W.2d 187, 193 (Iowa 2006) (quoting *Hartford– Carlisle Sav. Bank v. Shivers,* 566 N.W.2d 877, 884 (Iowa 1997)); *see Grefe & Sidney v. Watters,* 525 N.W.2d 821, 826 (Iowa 1994) (recognizing "review proceedings will not be allowed for the purpose of settling merely abstract questions"); *State ex rel. Turner v. Midwest Dev. Corp.,* 210 N.W.2d 525, 526 (Iowa 1973) (holding no duty nor authority to issue advisory opinions).

## I. Attorney Fees.

Angela requests attorney fees for both trials. The train from the first trial left the station long ago. After the second trial, the district court ordered each party to pay their own attorney fees. We find no reason to disturb the court's order. Angela also requests appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). When considering whether to exercise our discretion, "we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *In re Marriage of*

*McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *Okland*, 699 N.W.2d at 270). Upon consideration of these factors, we decline to award Angela appellate attorney fees.

George also requests appellate attorney fees. Upon consideration of the appropriate factors, we decline to award George appellate attorney fees.

## J. Conclusion

Any of Angela's arguments not addressed in this opinion are considered without merit. After our de novo review and consideration of the parties' arguments, we cannot say the trial court failed to do equity. *See In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). So we affirm the trial court's property decree in all respects. Costs of this appeal are taxed equally to the parties.

**AFFIRMED.**